The Illinois Appellate Court, 5th Division, is now in session. Your Honor, Justice Mathias, Debbie DeLore is presiding. Good morning, please be seated. The clerk will call the case. 122-1197, Reverse Mortgage Funding v. Lamar T. Catchins. Good morning, everyone. Welcome to the Illinois Appellate Court, 1st District, 5th Division. We'll ask the lawyers who are going to argue today to step up. Please introduce yourselves so we know. We'll begin with the appellant. Good morning. Tom Nooner and my colleague, Michael Kramer, on behalf of defendants, appellants, Tyrone Logan and Tyrone Christopher. Mr. Nooner, are you the only one who's going to argue for your side? Yes, Your Honor. All right, thank you. Ian from McAllen. Good morning, Your Honors. Phil Schroeder, I represent the Plaintiff Appellee Reverse Mortgage Funding LLC. All right, thank you. Please be seated for just a moment. We just want to note for the purpose of our record, today marks the first day we are welcoming Justice Fredrina Lyle to the court in the 5th Division. She has been with us for several months now, but this is the day of her first oral argument. So welcome, Justice Lyle. Thank you. And with that, we will allow 20 minutes for each side. We will give an extra 5 minutes for the appellant as a reply. Please keep in mind that we have very thoroughly read the briefs and the record. We are familiar with the underlying facts. This court tends to have lots of questions, so be prepared for that. And with that, Mr. Noonan, you may begin when you are ready. May it please the Court. We are here today because the circuit court erred in granting plaintiffs motion to strike and motion for summary judgment. That error short-circuited this litigation because defendants were prevented from continuing to pursue their discovery related to their well-played affirmative defense that Ida Christopher was mentally incapacitated when she executed the mortgage. The court's error denied defendants their fundamental right to defend themselves, and it has real-world implications. My client, Tyrone Christopher, who currently lives in the home, now faces the reality that he will be evicted and will be forced to find alternative housing. Under Illinois law, when reviewing a motion to strike an affirmative defense, the court must admit all well-pleaded facts. And where the well-pleaded facts and inferences drawn therefrom raise just the possibility that the party asserting the defense will prevail, striking the affirmative defense is improper. The circuit court misapplied these well-established procedural standards when it granted plaintiffs motion to strike. I asked just a real basic question, something that troubles me, and it's about the age of the case. And I'm talking about pre-COVID age of the case. The case was filed in 2016. There wasn't an affirmative defense interposed until 2019. Is that right? That's correct. So what was going on for three years? Was there discovery? Well, to be perfectly frank, that's a little before my time. I was in law school at the time, so I don't have the best knowledge. But I will say that I think the case was filed in 2017. I believe there was a motion to dismiss that was pending for over a year, and the motion to dismiss did not get denied until I believe it was April of 2019. And then in that summer, that's when we started working on answering the complaints. I also believe there might have been an amended complaint that was filed at one point as well. And you're doing this pro bono through a referral? Yes, Your Honor. One of the strongest arguments your opponent makes is that the circuit court didn't err in granting summary judgment to the company because you did not submit a Rule 161 affidavit to oppose summary judgment. Can you respond to that? Rule 191, Your Honor? Rule 191, I'm sorry. Okay. Yes. So as laid out in the briefing, we don't believe that we needed to file a 191B affidavit. The plaintiff filed a seal of text type motion alleging that our defense was insufficient. So they didn't file a summary judgment motion saying that they had disproved that Ms. Christopher was incapacitated. They were saying that it was insufficient. And I believe we've cited some case law that in Illinois when there's a seal of text type motion, a 191B affidavit is not required. I would also add that the plaintiff filed a summary judgment motion 21 days before we filed our amended affirmative defense. So we filed our original defense and our original answer in defense, I believe, in July of 2019. And then we sought medical records from Advocate Medical Group in order to file an amended answer in affirmative defense. And before we could even file that, the plaintiff filed its motion for summary judgment. So, you know, we were forced to brief summary judgment before we could even pursue discovery. Like I said, in the brief, we have the medical records from Advocate Medical Group, but that's all we've been able to do so far. And they're going to come back and say you had four or five years to do discovery. And I would generally disagree with that because, you know, we did think we had a good shot at the motion to dismiss. So while the motion to dismiss was pending, you know, I don't know that there was a formal state of discovery, but we were not pursuing discovery because we believe that the motion to dismiss would ultimately be granted. And after it was denied, that's when we began working on our answer in defense. And, you know, there's only a six-month period there where the motion was denied and then we filed our answer. So I know that the case started in 2017, but I think it's a little disingenuous for the plaintiff to argue that this case has been going on for six years when the fact is, you know, there was a motion to dismiss pending for over a year and then COVID got in the way a little bit. That's more on the back end of this case. When we have an issue of, you know, your entire case is premised around the original homeowner being incapacitated by Alzheimer's and or dementia. Yes. The usual remedy is not necessarily just to throw an affirmative defense out there, but to file a counterclaim for rescission. That's not here, is there? Yeah. Was there a reason we don't have that? Because that would have set things up a little differently for you. Sure. You know, I don't know that we have a specific reason for not choosing to file a counterclaim. I think we were just focused on defending our clients in the litigation, and I can't really speak to the decision not to file a counterclaim. My question is on what Justice Dwartson was asking. Where does this go? Even if you're correct and you have an affirmative, your affirmative defense was improperly stricken and summary judgment, we send it back. Then what? How does the case resolve itself? Right. And is it going to take another four years? I certainly hope not. But no, I think the case proceeds to discovery. I think we have presented several cases, several Illinois cases in the briefing that shows that you can establish incapacity by witness testimony. We have her two children who live in the home with her at the time. Right, but what's – okay, assume you can do that. What's the remedy? You've established incapacity. Is it to rescind the contract? The mortgage would be invalid. Well, then you'd have to pay back the money that was borrowed. You'd have to commit the money. Right, yes. And is the son – how many years are there, by the way? It's not just the one son, right? It's one son, and then Tyler and Logan are other clients. He was appointed the independent administrator of Ida Christopher's estate. But there's one son, and then there's a daughter who we do not represent. When I sat in mortgage foreclosure court, and Justice Lyle was there, too, we would have TILA claims, Truth in Lending Act claims, with sort of a similar scenario. And one of the things that I would insist on is you've got to plead. Well, you want to rescind this mortgage. That's great, but you've got to plead and sign your name that you're ready and willing and able to return the principal back because that's part of the remedy, and that's part of rescission, too. That's where you need to head here is if you want to rescind the mortgage, the debt just doesn't go away, does it? Right, no, that's correct, Your Honor. So I guess from a practical sense with the three children, if we do reverse, which is what you want us to do and send this back, are they going to be able to plead a valid rescission claim and say we're willing and able to get the money back? That would be a discussion for after the court makes a decision. But I will say that we did engage very briefly with potential settlement, and I'm not sure settlement is the right word for this case. But we did reach out to plaintiffs and try to figure out some way where we could pay back some of the money to get the property back in the hands of our clients. But those discussions really did not go anywhere at that time. But that's something that we understand is that the debt just doesn't go away. We'd have to repay it. Our client would have to repay it. Go ahead, counsel. So just continuing, I'd like to say that the circuit court erred by focusing on what we could prove, and this was fundamentally wrong at the pleading stage. If you read the transcripts of the March 10th hearing, Judge Robas and Chancery, he was focused on, as you mentioned, Your Honor, the amount of time that's passed. She executed the mortgage in June of 2014. How would we be able to prove that she was incompetent, you know, almost 10 years later? But that's a question that should not be asked at the pleading stage. All that the court should have looked at was what we pled in the affirmative defense, and we did plead an adequate defense. Do you contend it was error for the court to proceed to entertain summary judgment while there was an affirmative defense hanging out there that had not been set to issue yet? I don't think we specifically contend that in our briefing, but I do think that we – there's just something fundamentally wrong with plaintiff filing a motion of summary judgment before our answer, our amended answer, had even been filed. We had not been able to pursue discovery because, like I said, once the motion of summary judgment was filed, we had to focus on briefing the case, and there had really been no workup in discovery besides the subpoena from Advocate Medical Group and the medical records we obtained. But as pled in our amended affirmative defense, prior to signing the mortgage, one month prior, Ida Christopher was diagnosed with dementia. Is there any requirement in the law that in order to interpose defense of lack of capacity to a contract claim, that you have to submit it and have it adjudicated in the probate court or under the Probate Act? That's a good question that came up in our briefing. I will say the one case that plaintiffs seem to rely on is In re Trahe's estate, where there was a formal adjudication, but that adjudication took place three months after the funds transfer that was at issue. The court actually relied on witness testimony to determine capacity. So, no, I don't believe a formal adjudication is required. It certainly would be helpful if we had that, but we don't, and that's why we'd be relying on witness testimony. No, it's based on contract law. You don't have a meeting of the minds because you have a party to a contract who lacks capacity. It's certainly not required. Yes. I'm sorry, Your Honor, I'm not sure if I'm answering your question. No, you have. You have. It just seemed a very curious argument, and I think it went a long way to help confuse the trial judge as to what exactly was at issue. Yes. And I will say the trial judge did rely on another case, In re Trahe's estate of Grusky. I believe there was a formal adjudication in that case as well, but that case was a decision on the merits. Again, we're at the pleading stage here, and I believe, again, the judge misapplied the law by focusing on what we could prove, relying on a case that had gone through a formal hearing and had been decided on the merits, whereas here we're just focused on what we plead in our amended answer in affirmative defense. So in our amended affirmative defense, we do plead adequately citing verbatim from Ida Christopher's medical records, pursuant to Rule 2-606, that she was diagnosed with dementia one month prior to executing the mortgage. We also allege that she could not understand what she was doing. She could not understand the effect of signing the mortgage, and she could not protect her own interests. And under Illinois law, these are sufficient to establish an incapacity defense. Just like plaintiffs stating cause of action, defendants are not yet required to prove each element of their defense. And going back to the procedural posture of this case, plaintiffs are incorrect when they argue in their brief that defendants sat on their hands and did nothing in pursuing discovery. As I mentioned, we subpoenaed Advocate Medical Group for Ida Christopher's medical records. We included verbatim citations to those medical records in the affirmative defense. And then by the time we had filed, there was a motion for summary judgment pending, so we could now pursue discovery. When did your firm come into the case? I believe it was 20, I want to say 2019. If you'll bear with me for a moment, I actually believe I have something. I believe it was 2017. Because I know we're the firm who filed the motion to dismiss that was pending. Contrary to the circuit court's finding, defendants have every reason to believe that they can prove Ms. Christopher was mentally incompetent when she executed the mortgage. Illinois courts, as I mentioned earlier, have routinely allowed parties to establish mental incompetence through witness testimony. And here, for example, we can rely on Ida Christopher's physician, her son and daughter who lived with her at the time, and they can testify as to her mental competence when she executed the mortgage back in June of 2014. The discovery process is fundamental in civil procedure, and the consequences of being denied discovery have had real-world implications, as I mentioned at the beginning. Tyler Christopher is being evicted from the home due to his mother being targeted by Mark Diamond, a man who has been charged multiple times by both the Department of Justice and the state of Illinois. He was charged with defrauding mainly elderly minority women on Chicago's west side, and I believe the number of victims is in excess of 100. Ida Christopher is just another victim. And because of his actions, my client Tyler Christopher now faces eviction. Counsel, isn't there something else that your clients would face other than beyond mere eviction? Wouldn't there be a divestment of potential equity in the home from the family? Wouldn't there be generational wealth that would be stripped from them should this foreclosure go through? Yes, I mean, they're losing their home that they've had for decades. And I believe if you look at the factual background we included in our opening brief, Mr. Christopher, who is deceased, I believe his first name is Edward, they've owned the home, I believe, since the 70s or the 80s. So this is a drastic, life-altering consequence for a family in Chicago. We've got about two minutes left, counsel. Your Honor, I'd just like to thank you for your time. Unless anybody has questions, I'll reserve the rest of my time for rebuttal. But I would just ask that you keep in mind what I said about a life-altering consequence and please reverse the circuit court's error when they misapply the law. Any other questions from the members of the panel? Thank you. Thank you very much. Mr. Schroeder, you may proceed when ready. Good morning again, Your Honors. My name is Phil Schroeder. Can you try to speak right into the microphone? Yes, sir, it helps. My name is Phil Schroeder. I represent Reverse Mortgage Funding and may it please the Court. The first issue I would like to address is, I think, the main issue before this Court, which is whether or not the trial court properly struck the affirmative defenses because they pled insufficient facts. The amended affirmative defense was very similar to the original defense in that it was brief, it was very concise, and it essentially pled two things. One, that Ms. Christopher had been diagnosed with dementia about a month before she signed the mortgage, and the only alleged symptom of that diagnosis was deficits in her short-term memory. The law in Illinois states that persons of mature age or old age who suffer from illness or have defective memory are not presumed to be of unsound mind. They are presumed to be competent. Paragraph 6 of the affirmative defense is specifically alleged that she couldn't appreciate the effect of what she was doing when she was executing the mortgage. So what more would they need to allege? That allegation itself is conclusory. I don't believe that that's a well- Right, because it's supported by five paragraphs of facts before it. Right, so that allegation that she could not appreciate what she was doing- Because she had Alzheimer's and was diagnosed by a physician a month before. Right. That conclusion stems from the allegation that she has Alzheimer's and has deficient memory. Yes, it does. It's a logical consequence. Do you concede that in Illinois there is a valid affirmative defense that is available under the right set of facts of lack of mental capacity to enter into a contract? I do concede that is the basis. Then what else were they supposed to plead that they didn't plead in that affirmative defense? What other facts should have been added by that? Let's assume for the sake of my question that she was incredibly diseased by Alzheimer's and dementia and utterly lacked capacity to even know where she was on a given time, much less to sign a six-figure contract. What else should they have said? I think there's a number of things that they could have alleged. As you become more advanced with the disease, I think the symptoms become more apparent, whether you get confused about where you are, whether you think you're in your childhood bedroom and you're calling out for your mother or your father when clearly there's no obligation to plead proof. In fact, under old case law, you actually could be criticized as a pleading party for pleading evidence, right? Well, I don't think that's pleading evidence. I think you're pleading facts that you can prove up at a later time. But the fact alleged is that she had Alzheimer's and that the only symptom alleged was bad short-term memory. And I'm not a doctor. I don't know all the symptoms of Alzheimer's, but I do believe that... Is that what discovery is for? That would be what discovery is for. And in this case, there was no meaningful discovery that was propounded by the defendants. There was one subpoena that they issued, which I believe they did obtain medical records. But all they got from that was an allegation that she was diagnosed with dementia based on short-term memory issues. And I believe the other discovery that they were wanting to pursue was statements from their own family members. And I don't understand why that information couldn't have been brought forth earlier in the case. Presumably, these people would be willing and wanting to help with the defense, and they would be ready to sign their affidavit or state whatever facts they think would be in support of this defense. Your client's predecessor, it might have been your client or your predecessor, I forget which, accelerated the loan following this lady's death by sending a letter indicating that the loan was being accelerated by virtue of her failure to reside at the property as required by the terms of the contract. When, in fact, she was dead at the time and therefore couldn't reside anywhere, right? Explain that to us. Well, I... Is that sort of a form letter? I don't know if that's common practice or not, but, you know, perhaps there are situations where you cannot confirm someone's death. And so you are able, but maybe you are able to confirm they're not living at the property. You mean by going to the county recorder's office you can't do it? Is that what you're saying? Or maybe your client just was not aware that there was a vehicle. You know, just from a personal experience, sometimes it's difficult to find death certificates. You can't just make a phone call or ask for it. I think you've got to have either a family relationship. I'm honestly not, I don't know. The recorder does not let anyone just go down there and get someone's death certificate because of identity fraud. But I would think that if your client had a contractual interest, actually a lawyer usually can get it, but nevertheless. So, as I was saying, they had to allege that she could not appreciate what she was doing. And the allegation that she, which they do say that, they say in their defense, she could not appreciate what she was doing and therefore she was incapacitated. That's essentially a recitation of what the law says. And those are conclusions which stem from their two facts. But when the trial court looked at their pleading in the four corners of that document, the facts that they had to work off of were that she was diagnosed with dementia on May 24th of 2014, and the only alleged symptom was a short-term memory loss. And you, the question here is whether or not she was in fact suffering from dementia and whether she could appreciate the nature of the act. And isn't that a factual matter to be determined by the discovery and evidence you're hearing in terms of the sufficiency of your motion for summary judgment? Was there a genuine issue of material fact that was still pending? No, I don't think there was because these two facts, the fact that she was diagnosed with dementia, those were not in dispute. Plaintiff was not in a position and didn't attempt to discredit that diagnosis or dispute that fact. So that fact was not agreed upon, but it was not at issue. I just don't think that that was a material fact. And even if taken as true, the dementia diagnosis, along with her short-term memory issues, were not enough to either state a defense or raise an issue of facts at the summary judgment stage. Do you agree that if we were to find that the circuit court erred in striking the affirmative defense as improperly pleaded, then that necessarily means we have to vacate the summary judgment and the order of proving sale as well? That seems like the logical conclusion. I don't know. I mean, yeah, if that defense is still out there, that poses an issue. Because you never answered that defense. You moved to dismiss it. Right. I mean, I don't know how you would unwind the rest of it. So in this case, it's our position that those two facts were insufficient. If accepted as true, as the trial court judge did for the 2615 motion, if accepted as true, those two facts would not set forth a valid defense based on mental capacity. And so as we just talked about the motion for summary judgment, it's essentially the same issue. Their opposition to the motion was they had an affidavit from Ms. Christopher's son who said that she had a dementia diagnosis. And that was their defense to the motion for summary judgment. But for the same reasons, that doesn't set forth a lack of capacity defense that would not raise an issue of fact on our summary judgment. And while I will concede the defendant did not need to prove up their defense at that part of the case, summary judgment has been called the put up or shut up stage of the case where you have to present some factual basis that would give rise to denying the motion. Why didn't the son's, what I'll call the recycled affidavit, the affidavit that was used in the case against the guy who was running around the west side, the attorney general's case, why wasn't that affidavit sufficient to meet their obligations under the put up or shut up standard? Which I think I put into a, I think I might have been the first one to use that phrase. Well, that affidavit is essentially what they allege in their defense, but even less. It has less. It just says that she was diagnosed with dementia. And for the same reason that's not a defense on its own. It's not a material issue. There's a difference though between if the affidavit said she suffered from migraine headaches, all right, versus an affidavit that says she was diagnosed with dementia. Dementia is a medical condition that by its definition carries with it certain characteristics of inability to understand what's going on around you, doesn't it? Yes, and I agree that at some point, you know, people with dementia could be incapacitated. But having dementia is not per se meaning you lack mental capacity. It's not as a matter of law, I have dementia, therefore I cannot contract. There are many stages of dementia. I would presume many people with dementia can still carry on most of their affairs and they can appreciate the ramifications of a mortgage contract. And that's not to say that that applies to every person who's ever been diagnosed with dementia, but to simply say the woman had dementia and therefore we have a defense is insufficient under Illinois law. One of the, and I think dementia clearly is a medical condition. It would need some medical testimony before there could be a determination as to whether or not she exhibited the signs at that point. But one of the characteristics of dementia is that a person loses the ability to remember new information and learn new information. They, in fact, remember the old information that's stored in the brain. So they may remember being in elementary school and who was in the class, but not remember who this conversation that we're in fact having today. And I would think that, and I'm just taking issue with what you said about there may be some people that have dementia and can understand and negotiate a contract. They probably, some could sign, but depending on how advanced their dementia is, there would be a point where they could no longer actually sign their name. But whether they would be cognizant of the fact that by signing this document, I am doing these things that this document says. I think even that's something that we probably needed to have improved. If you want to say that, I just don't think the science would support that, but I'm not a doctor. I'm just a person whose mother had Alzheimer's. Okay. And I'm not suggesting that dementia cannot lead to being mentally incapacitated. There are many stages. It can progress fast or slow, and like I said, I'm not a doctor either, so I'm not going to pretend to be one here. But in this case, we had a diagnosis one month before the contract. So that's relatively recent. And the only other fact alleged is, or the only other symptom, or the only symptom alleged is a short-term memory. I think it was deficits in short-term memory is what the doctors know it was. And so it's our position that those two things are not enough to – if you prove those two things, that in and of itself would not invalidate the contract. You would have to do more to show incapacity. And so that – I'll touch on the discovery issue here. At the hearing on the motion for summary judgment, there was some discussion between the trial court and the defendant's attorney about the need to conduct discovery and what discovery could possibly show in the future and why that was necessary. But, you know, speculation or guesses about what maybe the defendants could find out in discovery in the future is not sufficient to raise an issue of fact. They needed to put up facts at that point. And as was discussed earlier, there was no 191B affidavit. There was not even a formal motion asking to conduct discovery. And I think that's important here because it's unclear what discovery they could not get but needed to get because they – It was a solid text motion. True. I would disagree with that. I would. Was there a discovery closure date in the case? No. And typically on the mortgage foreclosure calendar in Cook County, they don't set those dates. I think they've started to now, but it would be rare to even set. Well, certainly I think under our case law, it's improper for a trial judge to grant a solid text motion when the time for conducting fact discovery has not expired. Right. There was no deadline set in the case. And typically they don't set it. Maybe that's why it was so old. Possibly. These foreclosure cases tend to get old for reasons that I'm not completely sure of. Well, we could discuss that, but they probably want to get this case finished first. As far as the solid text motion, our motion was filed – it was filed before they even had their amended defense on file. So our motion for summary judgment was a classic motion for summary judgment. We attached an affidavit. We proved up every element of our case. We proved the default. We proved the amount due. Every other element we needed for an entry of a judgment of foreclosure and a summary judgment was included with that judgment affidavit. It was not a motion directed or for the purpose of arguing that defendant cannot prove their defense. At the time, there was no defense pending. And so even if this court were to decide this was a solid text motion, I don't think that would be grounds to reverse the trial court because the trial court would still have – it does relax the standards under 191B, but the trial court has discretion as far as whether or not it thinks additional discovery should take place. Yeah, unless the trial court was mistaken in striking the affirmative defense in the first instance, which you're quite right. The first affirmative defense and the second, the amended affirmative defense, are very similar. And they rise or fall together. Right. And so on the solid text issue, the requirements are relaxed, and it's essentially to give someone time, reasonable time, to conduct discovery. In this case, there was certainly reasonable time. The case is a 2016 case. Initially, the defendants came in, and I believe CVLS was helping them out, so nothing was really going on. But then their attorney appeared on November 21st of 2017. The hearing on the motion for summary judgment was two and a half – almost two and a half years later on March 10th of 2020. So there was certainly reasonable time to get their discovery done. And, again, their witnesses were family members, were the children of the decedent. And so it's unclear, without the 191BFA, it's unclear or it's hard to understand how those would be hostile witnesses or they couldn't procure information from those individuals and get those facts to support their defense and their opposition to the motion for summary judgment. You have about two minutes left. Okay, I will try and be quick here. The last thing I want to touch on is the ratification argument, which this was made in a reply before the trial court. And the trial court essentially found that it was waived, but the trial court didn't consider this. So the trial court didn't really get to the issue in our ratification argument, but it was raised in the trial court, and it can be considered by this court. This court can consider anything in the record as a basis to uphold the trial court orders. And it's a very simple argument. If this court finds that there was error in striking the defense or granting the motion for summary judgment, it can look to this ratification argument as a way to affirm those orders. And that is simply that where parties accept the benefits of a contract, they cannot then go back and disaffirm the contract. And in this case, it was the defense affidavit which really proved up the fact that they accepted the benefits. By continuing to live there, I'm not quite seeing where you're going with this. They accepted the benefits by what, continuing to live at the house? No, they accepted the benefits because after they signed the mortgage, the mortgage was fully funded. The funds were dispersed out. There was a $38,000 lien on the property that was paid off on a short payoff. So that was a benefit. But doesn't that go back to my question from a half hour ago, which is in a rescission, you know, the contract doesn't go away. You have to give back the money. So that would be money they would have to give back. Right. If it was rescinded, correct? Yeah, they would have to give the funds back. And so they accept that benefit. There's a contractor who was paid who remodeled the bathroom, and I believe about $5,100 were paid to Ms. Christopher. Did this property go to share sale? Yes, it did. And who bought it? It was a sale by the selling officer. Was there a purchaser? Was it a third-party purchaser? I just don't remember from the facts. Did the bank buy it back? I believe it was purchased by the plaintiff. Okay. And not the bank. Your client bought it. Right. I don't know if they're the current owner, but I believe they were the buyer at the same time. Well, my colleagues were talking about unraveling things, and if there's a third-party purchaser, that also creates another level of mess that has to be unwound. Right. Anything else? No. Thank you. Thank you. Before you begin, I'm frantically flipping paper here, but maybe you have the answer. What did happen at the share sale? Did the first mortgage buy the property back? Yes, they did. They bought it back. Okay. And I only want to touch on one issue because I believe you guys have understood our arguments, both in the briefing and in my opening. But on the ratification, I just want to point out two things. The first is that the plaintiff forfeited this argument by not raising it until the reply from the circuit court. We believe People v. Chapman pretty much clearly says that you can't raise an argument on a reply for the first time. We had no opportunity for a certify. That's why the trial court briefly addressed it at the motion for summary judgment. We can affirm on any basis in the record, right? That's true. That's true, Your Honor. That's true. But that goes to my second point. I hate to be long on adjectives here, but I think it's a little bit ridiculous to say that somebody who's identified as a victim by the Department of Justice who was victimized by somebody who's been charged three or four times by the Department of Justice in the state of Illinois, I think it's hard to see that that victim is, you know, benefiting. Mark Diamond received 72% of the funds. Ms. Christopher, they had a lien paid off and she received $5,000. And that leads me directly to the question I wrote down. As I read the record, the portion of the record regarding the Department of Justice case and the case that was in chancery before Judge Atkins against the alleged wrongdoer, there was a restitution judgment in favor of Mrs. Christopher, wasn't there? And there was a monetary liquidated amount, a dollar amount. I believe that's correct, Your Honor. But to be perfectly honest with you, I'm not sure if Ida Christopher ever received that money. My client, Tyler Christopher, her son, does not remember receiving that money. But I have no way of knowing whether or not. It might have been one of those things where they simply entered. There's a whole laundry list of hiding judgments in favor of different people. Right. Maybe he declared bankruptcy and didn't pay anybody. I'm really not sure, to be completely honest. But I just don't think ratification is a strong argument because Ida Christopher was a victim. As the government says, she was a victim. If anybody has questions, Your Honor, I'm happy to answer. Well, as my colleague stated at the beginning, both Justice DeLort and myself have the opportunity to serve in the mortgage foreclosure section for a number of years. One of these cases did float through the division. The singular fact that this gentleman was a bad guy and the feds were after him, in and of itself is not enough to win these cases. That you do understand? Yes, absolutely. Okay. I just think it's another fact that shows that somebody preyed on an individual who was suffering from dementia. She was diagnosed a month prior to him approaching her about the mortgage. Any other questions? If not, thank you, counsels, for your argument. Thank you very much, Your Honor. Thank you, Counsel Fleet-Pellant, for coming back the second time. And we will take the matter under advisement and you'll hear from the court in due course. That being the conclusion of the presence of the court for today, the court will stand in recess until 11 p.m.